IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL E. KEELING                      :              CIVIL ACTION

             v.                         :

SUPT. SHANNON, et al.                   :              NO.  02-4626

## REPORT AND RECOMMENDATION

THOMAS J. RUETER                                   January 24, 2003
United States Magistrate Judge

      Presently before the court is a pro se petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  Petitioner is presently incarcerated at the State Correctional Institution at
Frackville, Pennsylvania.  For the reasons stated below, this court recommends that the petition
be denied.

## I.    BACKGROUND

      On June 12, 1995, a jury sitting in the Court of Common Pleas for Philadelphia
County convicted petitioner of two counts of aggravated assault, two counts of simple assault,
robbery, robbery of a motor vehicle, theft and violation of the Uniform Firearms Act (Nos. 94-
11-1157-1159).  On July 24, 1995, the court sentenced petitioner to an aggregate sentence of
thirty-two and one-half to sixty-five years in prison.

      The evidence that was presented at trial by the Commonwealth was summarized
by the Superior Court of Pennsylvania as follows:

> On . . . November 18, 1994, between 11:30 a.m. and noon, Sergeant
> Joseph Osborne and Officer Herbert Nelson were on patrol in the vicinity
> of the intersection of Oak Lane and Cheltenham Lane in Philadelphia.
> Sergeant Osborne was a member of a police task force investigating
> carjackings which had recently taken place in Cheltenham Township,
> Montgomery County and the northeast section of Philadelphia.  As the
> officers turned right from Fifth Street to Oak Lane they noticed [petitioner]

sitting on the steps in front of 6727 North Fifth Street reading a newspaper.  According to Sergeant Osborne the carjackings in Cheltenham Township had taken place about 100 yards from this address directly across from Cheltenham Avenue.

The officers discussed the facts that [petitioner] resembled composite drawings of the suspected carjacker which they had in their possession.  As a result, the officers elected to stop and further investigate.  After parking their vehicle, the officers alighted and approached [petitioner].  They identified themselves as police officers and asked [petitioner] to stand up, whereupon he complied.  The officers patted [petitioner] down and then explained that they were looking for a carjacking suspect.  The officers asked [petitioner] for identification but [petitioner] had none on him.  However, [petitioner] told the officers that his name was Richard Brown, and gave them a date of birth and part of a social security number.  [Petitioner] also told the officers that he lived about four blocks south and west of the location where he was observed sitting on the steps.

The officers asked [petitioner] if he could help them out in their investigation and if he was willing to look at some composites of the suspects.  [Petitioner] indicated that he was willing to do so and accompanied the officers to the police car.  According to the officers' testimony, they did not want to show [petitioner] the composite photos in public so they "let" him sit in the back of the four door police car.  As the [petitioner] was sitting in the back of the police car, Sergeant Osborne sat in the driver's seat while Officer Nelson sat in the right front passenger seat.

While [petitioner] was looking through the pictures, Sergeant Osborne decided to run a computer check on the information [petitioner] had given him.  Sergeant Osborne drove the vehicle to a nearby convenience store, exited the vehicle, and phoned in the information to another detective.  According to Sergeant Osborne none of the information which [petitioner] had given them with respect to his address or social security number could be corroborated.  Sergeant Osborne then reentered the vehicle and began to more closely observe [petitioner].  After closer inspection, Sergeant Osborne believed that [petitioner's] appearance was an almost perfect match with that of the suspect in the composite drawings, except for the fact that [petitioner] had a slight growth of beard, i.e., a "five-o'clock" shadow as opposed to being clean shaven, which was how the suspect had been described by the carjacking witnesses.  Because of the perceived close similarity between [petitioner's] appearance and the composite

2

pictures, Sergeant Osborne elected to transport him to the police station for further investigation.

Sergeant Osborne told [petitioner] to exit the passenger side of the vehicle, but instead [petitioner] abruptly got out of the driver side. As Sergeant Osborne moved towards [petitioner], [petitioner] reached into his crotch area with his left hand and pulled out a dark colored revolver. Sergeant Osborne immediately dove to the ground and he heard two or three gunshots come from [petitioner's] direction. Sergeant Osborne and his partner returned fire, and [petitioner] fled the scene. The officers radioed for assistance and other police responded. [Petitioner] was apprehended by other officers about one hundred (100) yards away in the vicinity of Warnock and Linley Avenue. A .38 caliber revolver was lying on the ground about six or seven feet away from where [petitioner] was arrested.

Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 9-12 (Pa. Super. Ct. May 31, 2001) (citations omitted).

Petitioner appealed to the Superior Court of Pennsylvania which affirmed on June 26, 1996. Commonwealth v. Keeling, 683 A.2d 312 (Pa. Super. Ct. 1996). On December 24, 1996, the Supreme Court of Pennsylvania denied allocatur. Commonwealth v. Keeling, 687 A.2d 376 (Pa. 1996).

On September 12, 1997, petitioner filed a pro se petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541, et seq. The court appointed counsel who filed a no-merit letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988). On March 1, 1999, the PCRA court dismissed the PCRA petition and granted counsel leave to withdraw. On May 31, 2001, the Superior Court affirmed the PCRA court's denial of relief. Commonwealth v. Keeling, 779 A.2d 1219 (Pa. Super. Ct. 2001). The Supreme Court of Pennsylvania denied allocatur on March 18, 2002. Commonwealth v. Keeling, 796 A.2d 979 (Pa. 2002).

On July 11, 2002, petitioner filed the instant petition for a writ of habeas corpus,

and a memorandum of law.  He raised eleven claims:

1.    Appellate counsel had a conflict of interest because counsel at trial and on direct appeal were both employed at the Public Defender's Office;

2.    Trial counsel was ineffective for failing to challenge the legality and constitutionality of his arrest;

3.    Trial counsel was ineffective for failing to seek suppression of the evidence recovered from petitioner's apartment;

4.    Trial counsel was ineffective for failing to object to the trial court's denial of a continuance so that the defense could present the testimony of an interpreter from the preliminary hearing;

5.    The Commonwealth's key witness, Bong June Kwag committed perjury;

6.    Trial counsel was ineffective for failing to file a timely motion to quash the robbery charges;

7.    Trial and appellate counsel were ineffective generally;

8.    Trial counsel was ineffective for failing to call witnesses, i.e., Mr. Carroll and the two arresting officers;

9.    Trial counsel coerced him into pleading guilty to violating the Uniform Firearms Act;

10.   Petitioner was a victim of "aggressive sentencing" and "jury discrimination;" and

11.   PCRA counsel was ineffective for filing a Finley letter rather than raising all of the claims petitioner raised in his pro se petition.

(Petition ¶ 12; Petitioner's Mem. of Law at 1-30.).

On December 12, 2002, the District Attorney for Philadelphia County filed a brief

in response to the petition.  In her brief, the District Attorney argues that petitioner's claims

should be denied as meritless or because they are procedurally defaulted.

II.    **DISCUSSION**

A.    **Exhaustion and Procedural Default**

As noted above, the Commonwealth argues that several of petitioner's claims are procedurally defaulted. Before proceeding to examine each of the claims, the court will first review the doctrine of procedural default.

It is well established that a prisoner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a district court may entertain a federal petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842, 847 (1999); Evans v. Court of Common Pleas, Del. County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992).[1] "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.), cert. denied, 504 U.S. 944 (1992). To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). "This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989), cert. denied, 493 U.S. 1036 (1990).

---

[1]    On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement. This order is not be applied retroactively. See Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001), cert denied, 122 S.Ct. 1364 (2002).

However, when the petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally bars federal habeas corpus review.  Coleman v. Thompson, 501 U.S. 722, 729-32 (1991); Sistrunk v. Vaughn, 96 F.3d 666, 674-75 (3d Cir. 1996).  The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred...there is procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

Coleman, 501 U.S. at 735 n.1.  Upon a finding of procedural default, review of a federal habeas petition is barred unless the habeas petitioner can show that "(1) the procedural rule was not independent and adequate; (2) cause for his failure to comply with state procedural rules and prejudice resulting therefrom; or (3) that a fundamental miscarriage of justice will occur if not considered."  Peterkin v. Horn, 176 F. Supp. 2d 342, 353 (E.D. Pa. 2001); see also Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996).

A state procedural rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims if: "(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions."  Doctor, 96 F.3d at 683-84.  "A state [procedural] rule is adequate only if it is 'consistently and regularly' applied."  Id. at 684.

Petitioner can demonstrate cause for procedural default if he can show that some objective factor external to the defense impeded or prevented his ability to comply with the state procedural rules.  Caswell, 953 F.2d at 862.  To show prejudice, petitioner must present evidence

6

that this factor did more than merely create a possibility of prejudice; it must have "worked to

[petitioner's] <u>actual</u> and substantial disadvantage." <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986)

(emphasis in original) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  Additionally,

the fundamental miscarriage of justice exception to procedural default is only concerned with

"actual" innocence, and petitioner must show that it is more likely than not that no reasonable

juror would have convicted him absent the claimed error.  <u>Schlep v. Delo</u>, 513 U.S. 298, 327

(1995).

  **B.**  <u>**Habeas Corpus Standards**</u>

    Petitioner's habeas petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  The provisions of the AEDPA relevant to the instant matter

provide as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).  With respect to section 2254(d)(1), a federal habeas petitioner is

entitled to relief under the "contrary to" clause only if "the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>,

529 U.S. 362, 413 (2000).  The Court in <u>Williams</u> was careful to note that most cases will not fit

into this category, which is limited to direct and unequivocal contradiction of Supreme Court authority.  Id. at 406-08.  See also Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir.) (en banc) (to prove entitled to relief under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; . . . petitioner must demonstrate that Supreme Court precedent requires the contrary outcome") (emphasis in original), cert. denied, 528 U.S. 824 (1999).

Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams, 529 U.S. at 411.  Relief is appropriate only where the state court decision is also objectively unreasonable.  Id.  See Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (federal habeas court should not grant the petition unless "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified" under existing Supreme Court precedent) (quoting Matteo, 171 F.3d at 891), cert. denied, 523 U.S. 980 (2001).

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence.  If a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted. Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be

correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

C.     **Standard for Ineffective Assistance Claims**

Several of petitioner's claims allege ineffective assistance of counsel.  Before addressing the specifics of these claims, the court will first review the standards used to evaluate an ineffective assistance claim.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two prong test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance.  Under the Strickland test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, barring counsel's ineffectiveness, the result of the proceeding would have been different.  Id. at 687-96.  To satisfy the first prong of the Strickland test, a petitioner is required to show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted).

9

To satisfy the second prong of the <u>Strickland</u> test, a petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Id</u>. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. <u>Id</u>. It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999); <u>United States v. Fulford</u>, 825 F.2d 3, 9 (3d Cir. 1987). In such a situation, the second prong of the <u>Strickland</u> test has not been satisfied. Furthermore, counsel is not ineffective for failing to raise all possible claims of trial court error on appeal. Counsel may exercise his or her professional judgment as to which claims to pursue. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54 (1983) (decision of what issues to raise on appeal is charged to counsel; counsel need not assert every non-frivolous issue to guard against subsequent claim of ineffectiveness). Thus, it is not inappropriate for counsel, after consultation with his client, to override the client's wishes when exercising professional judgment regarding which issues to pursue on appeal. <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

    **D.**    <u>**Petitioner's Claims**</u>

        **1.**    <u>**Appellate Counsel Has a Conflict of Interest Because Petitioner Was Represented By the Public Defender's Office at Trial And on Direct Appeal**</u>

Petitioner's first claim is that because he was represented by counsel from the Public Defender's Office at trial and on direct appeal, this created a conflict of interest that prejudiced him. Petitioner cites to the pronouncement from the Pennsylvania Supreme Court stating: "As a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence is deemed to

have asserted a claim of his or her own ineffectiveness." <u>Commonwealth v. Ciptak</u>, 665 A.2d 1161-62 (Pa. 1995) (citation omitted). However, in cases where this has occurred, the Pennsylvania Supreme Court has remanded the case to the trial court to determine whether appellate counsel acted without a reasonable basis in not raising a claim of arguable merit and, if so, whether a defendant was prejudiced by the unreasonable conduct. <u>See</u> <u>Commonwealth v. Green</u>, 709 A.2d 382, 385 (Pa. 1998); <u>Ciptak</u>, 665 A.2d at 1162.

Under federal law, "counsel is ineffective if he or she 'actively represented conflicting interests,' and an actual conflict of interest adversely affected the lawyer's performance." <u>Hess v. Mazurkiewicz</u>, 135 F.3d 905, 910 (3d Cir. 1998) (quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980)). The Third Circuit explained as follows:

> Unlike the case in which a defendant argues that only counsel pursued flawed trial strategies, if the accused shows that an actual conflict of interest tainted counsel's performance, we will presume prejudice . . . . If the accused can establish only a potential conflict of interest, prejudice must be proved.

<u>Hess</u>, 135 F.3d at 910 (citations omitted).

Here, petitioner has not shown an actual conflict of interest. While the Supreme Court of Pennsylvania has recognized a potential conflict of interest when lawyers from the same Public Defender's Office act as both trial and appellate counsel,[2] petitioner must prove prejudice as a result of the potential conflict of interest. When petitioner presented his claim to the Superior Court of Pennsylvania, he failed to demonstrate prejudice. The court stated:

---

[2]    <u>But</u> <u>see</u> <u>Douglas v. Hendricks</u>, 2002 WL 1964088, at *13 (D. N.J. August 26, 2002) (noting that there is less potential for a conflict of interest between associates at a Public Defender's Office than between associates in a private practice because the former office "does not possess the same financial incentive as private firms.").

Appellant has not endeavored to explain, in his argument concerning this issue, how the fact that trial counsel and appellate counsel were both from the same public defender's office has prejudiced him. He does not specify what issues which he believes that prior counsel should have raised, or what actions prior counsel should have undertaken, or how prior counsel's failure to raise those issues or pursue those actions has undermined the truth determining process. Moreover, Appellant was represented during the PCRA proceeding in the Trial Court by counsel unaffiliated with the Public Defender's Office. Thus, he was afforded the full opportunity to assert any and all claims of ineffective assistance of his trial counsel with the assistance of counsel who was not affiliated with the Public Defender's Office. Appellant availed himself of this opportunity and asserted two such claims of trial counsel's ineffectiveness, namely that trial counsel was ineffective for failing to pursue a suppression motion and ineffective for failing to challenge the trial court's denial of a continuance of trial so that the testimony of an interpreter could be obtained. These claims have been properly presented to the Trial Court in the first instance and are now before us for appellate review.

Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 7-8 (Pa. Super. Ct. May 31, 2001).

As he failed to do before the Superior Court, petitioner, in his memorandum of law filed in this court, fails to demonstrate how he was prejudiced by appellate counsel. As noted by the Superior Court, petitioner, represented by an attorney not associated with the Public Defender's Office, did have an opportunity to present claims of ineffective assistance of trial counsel in his PCRA proceeding and the Superior Court addressed the merits of these claims. See id. at 8-21. Accordingly, because petitioner suffered no prejudice from direct appeal counsel's representation, his first claim for relief must be denied.

**2.     Counsel Was Ineffective for Failing to Challenge the
Legality and Constitutionality of Petitioner's Arrest**

Petitioner's second claim is that his counsel was ineffective for not pursuing a motion to suppress challenging the legality and constitutionality of his arrest. The Supreme Court set forth the standard to be used to evaluate these claims as follows: "Where defense

counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

The Superior Court of Pennsylvania fully addressed the merits of this claim. After a lengthy discussion of the facts of the detention and subsequent arrest, the court found that the police actions did not violate the Fourth Amendment and, accordingly, any motion to suppress would have been denied as meritless. Accordingly, the Superior Court concluded that counsel could not have been ineffective for failing to raise a meritless claim. The court stated the following:

> Since there existed adequate reasonable suspicion for Appellant's initial detention by the police, and more than ample probable cause for his subsequent arrest, due to his actions of pulling a firearm from a concealed location, pointing it at the officers and shooting it, it is quite clear that there was no reasonable basis for Appellant's trial counsel to litigate the previously filed suppression motion. Commonwealth v. Morales, 549 Pa. 400, 424, 701 A.2d 516, 528 (1997) (trial counsel cannot be deemed ineffective for failing to pursue meritless claim).

Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 17 (Pa. Super. Ct. May 31, 2001).

Since the Superior Court ultimately found that petitioner's detention and subsequent arrest did not violate the Fourth Amendment, petitioner suffered no prejudice from the failure of trial counsel to challenge the detention and arrest. Petitioner has not shown that the Superior Court misinterpreted federal law or misapplied the facts when it found that the seizure of the petitioner was lawful. Petitioner alleges that the Superior Court erred in rendering its decision without a copy of the preliminary hearing testimony in its possession. Petitioner alleges

13

that at no time did his trial counsel challenge the legality of his arrest. Therefore, it is not clear how the preliminary hearing transcripts are relevant to the Fourth Amendment claim. Petitioner has not demonstrated the relevance of the preliminary hearing testimony. Thus, this claim is without merit. Accordingly, petitioner's claim of ineffective assistance of counsel must be denied. See Kimmelman, 477 U.S. at 375.

### 3.   Trial Counsel Was Ineffective for Failing to Seek Suppression of the Evidence From Petitioner's Apartment

Petitioner alleges that trial counsel was ineffective for failing to seek suppression of evidence from his apartment, that is, a Smith & Wesson revolver, six .38 caliber live rounds, photographs and shell casing cartridges. See Petitioner's Mem. of Law at 14.

This claim was not presented to the state courts. The only claim resembling this issue is petitioner's claim raised in Superior Court that counsel was ineffective for failing to pursue suppression of the revolver, which was found on the ground after being discarded by the petitioner during the police chase. Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 8, 17 (Pa. Super. Ct. May 31, 2001). The Superior Court never addressed counsel's failure to suppress the gun and other items seized from petitioner's apartment.[3] Accordingly, petitioner has not exhausted his state remedies as to this claim.

_____

[3]     The Superior Court noted that it had difficulty discerning petitioner's precise claim since petitioner did not specify in his appeal what evidence should have been suppressed. The Superior Court presumed it was the critical evidence seized by the police at the time of petitioner's arrest, that is, the gun discarded by the petitioner during the police chase. Petitioner alleges that he identified the evidence he believed his counsel should have sought to suppress in his reply brief and his motion for re-argument before the Superior Court. As noted correctly by the Commonwealth, these belated attempts to raise the issue were not proper according to state appellate procedure. See Response at 14-15. See also Commonwealth v. Fahy, 737 A.2d 214, 218 n.8 (Pa. 1999) (appellant is prohibited from raising new issues in a reply brief); Bowman v. Meadow Ridge, Inc., 615 A.2d 755, 756 n. 1 (Pa. Super. Ct. 1992) (appellate court will not consider new issues raised in a petition for reargument.).

Petitioner's third claim is now procedurally defaulted because such a claim could be raised only in a second PCRA petition which is now barred by the one-year statute of limitations.  See 42 Pa. Cons. Stat. Ann. § 9545(b); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002) ("It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of an untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals.").  This court cannot excuse the procedural default because petitioner has shown neither cause for the default nor that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice.  Therefore, the third claim cannot be reviewed by the court.

In any event, even if this court could consider the merits of this claim of ineffectiveness, petitioner would have to prove not only that the suppression motion would have been successful, but also "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  Kimmelman, 477 U.S. at 375.  Given the evidence at trial, which showed that petitioner shot at the police after carjacking an automobile and the carjacking victim identified the petitioner as the culprit, it is highly unlikely that the outcome of the trial would have been altered if the evidence allegedly recovered from the petitioner's apartment was excluded.  Accordingly, the third claim for relief must be denied for this additional reason.

### 4. The Trial Court Erred in Denying a Continuance So That Defense Could Present the Testimony of an Interpreter From The Preliminary Hearing

Petitioner next argues that the trial court erred in denying him a continuance so that he could present the testimony of an interpreter from the preliminary hearing who, he

alleges, would have testified about an alleged discrepancy in the testimony of a Commonwealth witness.

Here, petitioner never "fairly presented" his claim of trial error for denying a continuance to the state courts. Petitioner did raise an ineffective assistance of counsel claim relating to the denial of the continuance in his PCRA proceeding. Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 18-20 (Pa. Super. Ct. May 31, 2001), but an ineffective assistance of counsel claim is not the same as the underlying substantive claim. See Gattis v. Snyder, 278 F.3d 222, 237 n.6 (3d Cir.) (ineffective assistance claim raised in Delaware Supreme Court involved different legal theory than substantive claim raised in federal court; exhaustion requirement not satisfied), cert. denied, 123 S.Ct. 660 (2002); Senk v. Zimmerman, 886 F.2d 611, 614 (3d Cir. 1989) (claim that counsel failed to challenge a jury instruction concerns his attorney's performance and only indirectly implicates the underlying claim.) Accordingly, petitioner has not exhausted his state court remedies as to this claim. Petitioner's fourth claim is now procedurally defaulted because such a claim could be raised only in a second PCRA petition which is now barred by the one-year statute of limitations. See 42 Pa. Cons. Stat. Ann. § 9545(b); Whitney, 280 F.3d at 240, 251("It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of an untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals."). This court cannot excuse the procedural default because petitioner has shown neither cause for the default nor that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. Therefore, this fourth claim cannot be reviewed by this court.

16

5. **The Commonwealth's Key Witness, Bong June Kwag, Committed Perjury**

Petitioner's fifth claim is that the Commonwealth's key witness, Bong June Kwag, committed perjury. Petitioner did not raise the claim in the Superior Court of Pennsylvania. See Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 3-4 (Pa. Super. Ct. May 31, 2001). For the same reasons the court found petitioner's earlier non-exhausted claims procedurally defaulted, the petitioner's fifth claim is also procedurally defaulted.

6. **Trial Counsel Was Ineffective for Failing to File a Timely Motion to Quash the Robbery Charges**

Petitioner's next ground for relief is that trial counsel was ineffective for failing to file a timely motion to quash the robbery charges against him. The Superior Court rejected this argument finding that the motion was timely and therefore counsel was not ineffective. Commonwealth v. Keeling, No. 481 EDA 2000, slip op. at 20-21 (Pa. Super. Ct. May 31, 2001). The Superior Court noted that the trial court dismissed the motion on the merits after a hearing. Id. at 21 (citing N.T., 6/7/95, at 127-128). Thus, petitioner's assertion that the motion to quash was untimely is factually inaccurate. Accordingly, this claim of ineffective assistance of counsel must be denied.

7. **General Allegation of Ineffective Assistance of Counsel**

Petitioner's seventh claim for relief is that trial and appellate counsel were ineffective for "failure to preserve these claims on Direct Appeal." (Petition at 11.) Petitioner does not explain how counsel acted unreasonably or what particular claims counsel allegedly failed to preserve. Moreover, petitioner failed to exhaust his state court remedies for this general allegation of ineffective assistance of counsel. See 28 U.S.C. § 2254(b)(1)(A).

17

A federal district court should dismiss habeas corpus claims that are based on vague and conclusory allegations. When claiming that counsel was ineffective, a habeas petitioner must allege facts to identify precisely how his counsel failed to fulfill his or her obligations. Absent such specifics, the court should summarily dismiss the claim. See United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) (habeas corpus petitioner's vague ineffective assistance of counsel claim stating that he was denied right to allocution at sentencing as well as right to representation of counsel was insufficient to raise Sixth Amendment claim); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (Petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention."); Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir.) (petitioner's vague and general allegations fail to make sufficient showing to justify habeas corpus relief), cert. denied, 484 U.S. 946 (1987); Spillers v. Lockhart, 802 F.2d 1007, 1010 (8th Cir. 1986) (habeas petitioner's claims he was denied effective assistance of counsel at appellate stage because counsel failed to demonstrate on appeal customary skills and diligence of competent attorney, raise issues of merit to state supreme court, and properly prepare habeas petition, were vague and conclusory, and properly dismissed summarily by district court.)

Here, petitioner's vague and conclusory claim of trial and appellate counsel's ineffectiveness is devoid of any factual support and accordingly must be dismissed.

**8.    Trial Counsel Was Ineffective for Failing to Investigate and Call as Witnesses the Manager of an Apartment Complex and the Two Arresting Officers**

Petitioner's next claim is that trial counsel was ineffective for failing to investigate and call three witnesses:  the manager of an apartment complex and the two arresting officers.

This claim was never presented to the Superior Court of Pennsylvania and thus is unexhausted.  For the same reasons the court found petitioner's other unexhausted claims procedurally defaulted, petitioner's eighth claim is also procedurally defaulted.  Accordingly, relief must be denied for this claim.

**9.    Trial Counsel Coerced Petitioner Into Pleading Guilty To Violating the Uniform Firearms Act**

Petitioner's next claim argues that his trial counsel coerced him into pleading guilty to violating the Uniform Firearms Act.  Petitioner never properly raised this claim before the Superior Court.[4]  Thus, for the reasons stated above, this claim is procedurally defaulted and must be dismissed.

---

[4]    Petitioner alleges he raised the issue in a Reply Brief before the Superior Court. The Commonwealth states that petitioner did not raise the issue in his Reply Brief.  See Response at 18-19.  In any event, even if he had, the Superior Court would not consider the issue since it was not properly raised.  Thus, the issue is procedurally defaulted.  See Fahy, 737 A.2d at 218 n.8 (Appellant is prohibited from raising new issues in Reply Brief.)

10.    **Petitioner's Sentence Was Excessive and Did Not Justify an Upward Departure from the Pennsylvania's Sentencing Guidelines and the Trial Court Abused its Discretion in Determining that African Americans Were Not Discriminated Against During Jury Selection**

In his tenth claim, petitioner raises the two claims that the Public Defender's Office raised on his behalf on direct appeal before the Superior Court of Pennsylvania.  (Petition at 12.).

The first claim is that his sentence was excessive and did not justify an upward departure from Pennsylvania's Sentencing Guidelines.  This claim was raised before the Pennsylvania Superior Court.  The appellate court rejected the claim as a matter of state law.  Petitioner never challenged his sentence on federal constitutional grounds in the state courts.

Federal courts cannot "reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  A federal court can grant a petition for a writ of habeas corpus only when there has been a violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); Johnson v. Rosemeyer, 117 F.3d 104, 108 (3d Cir. 1997).  See also Dugger v. Adams, 489 U.S. 401, 410 (1989) ("[M]ere errors of state law are not the concern of this Court unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.").

Here, the Superior Court of Pennsylvania held that the trial court did not violate the state's sentencing guidelines when it imposed its sentence upon the petitioner.  Commonwealth v. Keeling, No. 03001 Phila. 1995, slip op. at 2 (Pa. Super. Ct. June 26, 1996) (adopting opinion of trial court).  This court is bound by this determination.  See Johnson, 117 F.3d at 115 ("[O]nly in extraordinary and compelling circumstances should a federal district

court in a habeas corpus case decline to follow the opinions of a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner."). Furthermore, petitioner has failed to alleged, much less prove, that his sentence violates any of his constitutional rights. Therefore, habeas relief cannot be granted on this claim.

Petitioner next argues that the trial court abused its discretion in determining that African Americans were not discriminated against during jury selection when the prosecutor struck African Americans during voir dire.

The Supreme Court of the United States has articulated a three-part process to determine whether a prosecutor's peremptory challenges were used in a racially discriminatory manner. See Batson v. Kentucky, 476 U.S. 79, 96-98 (1986). First, the defendant must prove that the challenges were exercised on the basis of race. Id. at 96. Second, the burden then shifts to the prosecutor to provide race-neutral explanations for the challenges. Id. at 97. A challenge is considered to be race-neutral unless discriminatory intent is inherent in the proffered explanation. Hernandez v. New York, 500 U.S. 352, 360 (1991). Last, the judge makes a factual determination as to discrimination. Batson, 476 U.S. at 98. See also Hernandez, 500 U.S. at 364 (the determination of discriminatory intent is a pure issue of fact).

In the instant case, the prosecutor used four peremptory strikes against African Americans. The petitioner's counsel objected. In response, the prosecutor stated on the record his reasons for the use of these four peremptory strikes. The trial judge, the Honorable Arnold L. New, found that "the prosecutor provided [the court] with legitimate, race-neutral explanations for each of the peremptory challenges leading to the Batson Motion." Commonwealth v. Keeling, No. 1157, slip op. at 8 (C.P. Phila. Co. Jan. 23, 1995). Accordingly, Judge New

21

rejected the <u>Batson</u> claim.  <u>Id</u>.  The Superior Court affirmed.  <u>Commonwealth v. Keeling</u>, No. 03001 Phila. 1995, slip op. at 2 (Pa. Super. Ct. June 26, 1996).

The state court's factual finding that the prosecutor did not intend to discriminate on the basis of race in exercising his peremptory strikes is a factual finding entitled to a presumption of correctness.  <u>See</u> 28 U.S.C. § 2254(e)(1).  <u>See also</u> <u>Riley v. Taylor</u>, 277 F.3d 261, 281-82 (3d Cir. 2001) ("This determination that the prosecutors did not intend to discriminate on the basis of race in exercising their peremptory strikes . . . is a factual finding entitled to a presumption of correctness.").

Petitioner has not shown by "clear and convincing evidence" that the state court's finding that the prosecutor did not intend to discriminate against jurors on the basis of race was incorrect.  Accordingly, this court cannot grant habeas corpus relief on petitioner's <u>Batson</u> claim.  Thus, this claim must be denied.

### 11.    PCRA Counsel Was Ineffective

Petitioner's final claim is that PCRA counsel was ineffective for filing a <u>Finley</u> letter rather than raising all of the claims that petitioner has raised in this federal habeas petition. This court must deny this claim since the ineffectiveness of counsel during a state collateral post-conviction proceeding is not a ground for relief under 28 U.S.C. § 2254.  <u>See</u> 28 U.S.C. § 2254(i).  <u>See also</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987) (no Sixth Amendment right to effective assistance of counsel during state collateral post-conviction proceedings).

Accordingly, for all of the above reasons, the court makes the following:

**R E C O M M E N D A T I O N**

AND NOW, this 24th day of January, 2003, the court respectfully recommends

that the petition for a writ of habeas corpus be **DENIED**, and that no certificate of appealability

be granted.


BY THE COURT:


_____
THOMAS J. RUETER
United States Magistrate Judge

23

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL E. KEELING                :                CIVIL ACTION

                    v.                :

SUPT. SHANNON, et al.           :                NO.  02-4626

**O R D E R**

AND NOW, this         day of                    , 2003, upon careful and

independent consideration of the pleadings and record herein, and after review of the Report and

Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**ORDERED**

1.    The Report and Recommendation is APPROVED and ADOPTED;

2.    The petition for a writ of habeas corpus is DENIED; and

3.    A certificate of appealability is <u>not</u> granted.

BY THE COURT:

_____

CLIFFORD SCOTT GREEN,      Sr. J.